IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Civil No. 1:17-cv-24615-SCOLA/TORRES

CONTRABAND SPORTS, LLC,

      Plaintiff and Counterclaim Defendant,

vs.

FIT FOUR, LLC,

      Defendant and Counterclaimant.

**DEFENDANT'S MOTION TO ENFORCE SETTLEMENT
AGREEMENT AND FOR AWARD OF ATTORNEYS' FEES**

Pursuant to Federal Rule of Civil Procedure 7 and Local Rule 7.1, Defendant and Counterclaimant Fit Four, LLC ("Fit Four"), by and through undersigned counsel of record, hereby respectfully moves the Court to enforce the parties' Settlement Agreement and Release (the "Agreement") agreed to on July 10, 2018. In accordance with Local Rule 7.1(a)(1), the instant motion is supported by the memorandum of law set forth below.

**INTRODUCTION**

Following nearly three months of settlement negotiations, Plaintiff and Counterclaim Defendant Contraband Sports, LLC ("Contraband"), via counsel, accepted Fit Four's final revisions to the parties' settlement Agreement. Notably, Contraband's counsel drafted the first iteration of that Agreement based on settlement terms initially proposed by Contraband, not Fit Four. In any event, pursuant to the terms of the parties' Agreement, Fit Four acquired various rights and Contraband was subject to certain obligations, including a requirement to dismiss this action with prejudice in a timely manner. Contraband has admitted that it voluntarily proposed settlement and then accepted Fit Four's revisions to the final Agreement made over the course of

many weeks. Nevertheless, shortly after accepting the parties' agreed-to and full-length settlement Agreement, Contraband apparently acquired additional litigation funding and now has buyer's remorse. Specifically, Contraband is refusing to comply with the parties' binding settlement Agreement solely on the basis that it was accepted when Contraband was tight on funds and now, apparently having obtained an influx of cash, has had a change of heart. Even if this were true, the law does not provide Contraband with an escape clause merely because it now dislikes the Agreement it voluntarily accepted. Indeed, under such circumstances, this Court can and should enforce the parties' binding settlement Agreement. To this end, and to secure Contraband's compliance, Fit Four has prepared the instant motion seeking enforcement of the Agreement, including an award of Fit Four's attorneys' fees under the terms of that Agreement.

## STATEMENT OF RELEVANT FACTS

1. On December 19, 2017, Contraband initiated the above-captioned action. (*See* docket no. 1.)

2. Following service of Contraband's complaint, Fit Four answered asserted various counterclaims against Contraband. (*See* docket no. 7.)

3. By virtue of filing Contraband's complaint on December 19, 2017 (*see* docket no. 1) and Contraband's answer to Fit Four's counterclaims on March 6, 2018 (*see* docket no. 12), Andrew S. Rapacke and The Rapacke Law Group, P.A. appeared on behalf of Contraband and comprise Contraband's sole counsel of record in this case. *See* LOCAL RULE 11.1(d)(1) ("The filing of any pleading shall, unless otherwise specified, constitute an appearance by the person who signs such pleading.").

4. And where Contraband is a business entity, not a natural person, Contraband cannot represent itself but instead must appear and act exclusively through an attorney. *E.g., Nat'l Indep. Theatre Exhibitors, Inc. v. Buena Vista Distribution Co.*, 748 F.2d 602, 609 (11th Cir. 1984) ("corporations must always be represented by legal counsel" to "ensure[] that a licensed attorney, an officer of the court, is responsible for conducting the corporation's

litigation" and to "protect[] the court and the public from unscrupulous and irresponsible behavior.").

5.      Pursuant to the Court's Order Requiring Discovery and Scheduling Conference and Order Referring Non-Dispositive Pretrial and Discovery Matters to the Magistrate Judge (docket no. 5) and Order Setting Discovery Procedures (docket no. 6), the parties held the Federal Rule of Civil Procedure 26(f) conference via counsel on March 12, 2018. (*See* docket no. 13.)

6.      The Court subsequently entered the Scheduling Order and Order of Referral to Mediation. (*See* docket no. 14 (the "Scheduling Order")).

7.      On May 2, 2018, *Contraband* (via counsel) offered a settlement proposal to Fit Four. (*See* correspondence dated Mar. 5, 2018 – July 31, 2018, collectively attached as **Exhibit "A"**, at 24 ("We have spoken with our client over the weekend regarding the case and wished to propose a settlement for this matter."))[1]

8.      Through their respective attorney-agents, the parties subsequently engaged in serial settlement negotiations from May 2, 2018 through July 10, 2018. (*See id.* at 4-24.)

9.      Those negotiations culminated in *Contraband* outlining a final set of agreed upon deal points and providing the same to Fit Four on May 23, 2018 at 3:49 pm. (*See id.* at 12-14.)

10.     Within hours of receiving *Contraband's* outline of deal points, Fit Four accepted the same at 8:19 pm that same evening without a single change. (*See id.* at 12.)

---

[1] In order to protect substantive confidential settlement communications and terms between the parties, Exhibits A-D appended hereto are the subject of a concurrently-filed motion to for leave to file under seal. If the motion for leave to file under seal is granted, Fit Four will file Exhibits A-D under seal. During the interim, Exhibits A-D have been provided to and served on Contraband along with a complete copy of the instant motion. If the motion for leave to file under seal is denied, Fit Four will promptly provide the Court with complete copies of Exhibits A-D.

11.     Pursuant to the outline of the parties' settlement agreement as proposed by Contraband and accepted by Fit Four, Contraband undertook preparation of a full-length settlement agreement. (*See id.*)

12.     *Contraband* subsequently provided Fit Four with a draft full-length settlement agreement on June 18, 2018, which draft sought to memorialize Contraband's outline of the parties' settlement agreement in greater and explicit detail. (*See, e.g., id.* at 8-9.)

13.     Following Fit Four's prompt provision of modest and minor revisions to the draft full-length agreement, Contraband ostensibly met with its counsel on at least two occasions to specifically review Fit Four's proposed revisions to the agreement. (*See id.* at 5-7 ("We will review and consult without our client"; "[w]e are reaching out to the client again today"; "we are scheduled to meet with our client tomorrow to go over things once more to ensure [Contraband's] understanding [of the] agreement ….")).

14.     Following that detailed and thorough review, Contraband's counsel stated as follows on July 10, 2018: "**Our client [i.e., Contraband] gave us approval this morning to accept [Fit Four's] changes to the Settlement Agreement**." (*See id.* at 4 (emphasis added)).

15.     Based on Contraband's explicit acceptance of the parties' final 13-page, full-length Agreement, Fit Four promptly executed and returned a copy of the same to Contraband for countersignature on July 18, 2018. (*See id.* at 3; *see also* Agreement, attached hereto as **Exhibit "B"**.)

16.     Notwithstanding Fit Four's execution of the parties' final, full-length Agreement and Contraband's agreement to immediately provide a countersignature (*see* Ex. A at 2-3), on July 31, 2018 Contraband's principal, Mr. Christopher French, sent an email directly to Fit Four's counsel stating that Contraband's counsel (i.e., The Rapacke Law Group) had unexpectedly terminated their representation of Contraband. (*See, e.g., id.* at 1 ("Contraband will be handling this matter itself and you may deal with Contraband directly"); correspondence dated Jul. 31, 2018 – August 2, 2018, collectively attached hereto as **Exhibit "C"**, at 3-4 ("it was

unexpected that the Rapacke law firm would terminate without prior notice"); correspondence dated May 23, 2018 – August 2, 2018, collectively attached hereto as **Exhibit "D"**, at 5 (same)).

17. After following up with The Rapacke Law Group to confirm the same, including authorization to correspond directly with Mr. French (*see* Ex. A at 1), Fit Four contacted Mr. French to obtain an authorized countersignature on behalf of Contraband on the Agreement and to finalize Contraband's voluntary dismissal of the above-captioned action. (*See, e.g.,* Ex. C at 1-3.)

18. Notwithstanding Contraband's unequivocal and unconditional acceptance of the parties' detailed, full-length Agreement, Mr. French informed Fit Four that, while he had in fact authorized Contraband's counsel to accept the Agreement on July 10, 2018 on Contraband's behalf, he allegedly only did so because Contraband had no money to prosecute this action at the time. (*See, e.g., id.* at 1-2.)

19. Nevertheless, despite acknowledging his knowing acceptance of the parties' detailed, full-length Agreement on Contraband's behalf, Mr. French went on to inform Fit Four that Contraband has now secured additional litigation funding and no longer wishes to be bound by the parties' Agreement. (*See, e.g., id.*)

20. Fit Four informed Mr. French of Contraband's obligations under the Agreement, including the obligation to pay Fit Four's attorneys' fees for any necessary efforts to enforce the Agreement. (*See, e.g., id.*; *see also* Ex. B at § 8.12.)

21. The parties also discussed Fit Four's intent to prepare and serve the instant motion in the event that Contraband refused to comply with the parties' binding Agreement. (*See, e.g.,* Ex. C at 1-2.)

22. Mr. French, on behalf of Contraband, refused and has continued to refuse to comply with the parties' binding Agreement. (*See, e.g., id.*; Ex. D at 1.)

23. Moreover, despite nearly three months of settlement negotiations, Mr. French now claims that Contraband was either mislead by its counsel or that Contraband's counsel did

5

not understand Contraband's wishes throughout the entire settlement negotiation process. (*See, e.g.,* Ex. D at 1.)

24. Despite apparently informing their client that they were terminating their representation some two weeks ago (*e.g.,* Ex. A at 1, Ex. C at 1-4), Contraband's counsel (The Rapacke Law Group) remains counsel of record in this case and has yet to seek the Court's leave to withdraw. (*See* docket, *passim*.) *See also* LOCAL RULE 11.1(d)(3) ("No attorney shall withdraw the attorney's appearance in any action or proceeding *except by leave of Court* after notice is served on the attorney's client and opposing counsel." (emphasis added)).

## ARGUMENT

**I. The Parties' Complete Agreement, Unconditionally Accepted on July 10, 2018, Constitutes a Binding Detailed Contract, which the Court Can and Should Enforce; Contraband Should be Required to Comply With the Parties' Agreement**

    A.    <u>Contraband, a Business Entity, is Bound by the Acts and Omissions of its Freely Selected Attorney-Agents, Including Contraband's Counsel's Acceptance of the Parties' Agreement on Contraband's Behalf</u>

As a threshold matter, Contraband is now attempting to repudiate the parties' binding Agreement on the basis that the Agreement was allegedly "accepted" by Contraband's counsel, not by Contraband itself. (*E.g.,* Statement of Relevant Facts ("Facts"), *supra*, at ¶¶ 18-23.) This argument must be rejected from the outset as a matter of well-settled, black letter law. To begin with, corporations and other business entities cannot appear *pro se* but must be represented by, and act through, counsel for purposes of litigation. *E.g., Osborn v. United States Bank*, 22 U.S. 738, 830-31 (1824) ("A corporation … can appear only by attorney…."); *Palazzo v. Gulf Oil Corp.*, 764 F.2d 1382, 1385-86 (11th Cir. 1985) ("The rule is well established that a corporation is an artificial entity that *can act only through agents*, cannot appear *pro se*, and must be represented by counsel[,]" noting that this "rule applies even where the person seeking to represent the corporation is its president and major stockholder." (emphasis added)). Indeed, it has been recognized that the purpose of this rule is to "ensure[] that a licensed attorney, an officer of the court, is responsible for conducting the corporation's litigation" and to "protect[]

6

the court and the public from unscrupulous and irresponsible behavior." *Nat'l Indep. Theatre Exhibitors, Inc. v. Buena Vista Distribution Co.*, 748 F.2d 602, 609 (11th Cir. 1984).

Moreover, when an attorney appears on behalf of a corporate litigant, such an appearance is itself evidence that the attorney is authorized to act on the corporation's behalf. *E.g., Osborn*, 22 U.S. at 830-31. Along these same lines, it is also well-settled that litigants are bound by the conduct of their freely-selected counsel or attorney-agents. *E.g., Link v. Wabash Railroad Co.*, 370 U.S. 626, 633-34 (1962) ("Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent."); *Smith v. Ayer*, 101 U.S. 320, 326 (1880) (each party is deemed bound by the acts of his attorney-agent and is considered to have "notice of all facts, notice of which can be charged upon the attorney."); *Abdelgalel v. U.S. Atty. Gen.*, 443 Fed. Appx. 458, 463 (11th Cir. 2011) ("a district court does not abuse its discretion by holding a plaintiff accountable for his retained attorney's conduct."); *In re Southeast Banking Corp.*, 204 F.3d 1322, 1334 (11th Cir. 2000) (recognizing that even the severe sanction of dismissal for attorney misconduct is appropriate where an attorney acts as a "freely selected agent" of the party); *Citibank, N.A. v. Data Lease Fin. Corp.*, 904 F.2d 1498, 1505 (11th Cir. 1990) (party "cannot avoid the consequences of" previously accepting a stipulated dismissal of its claims with prejudice merely by retaining new counsel). Indeed, even "an attorney's failure to evaluate carefully the legal consequences of a chosen course of action provides no basis for relief." *E.g., Nemaizer v. Baker*, 793 F.2d 58, 62 (2d Cir. 1986). The client's remedy is, instead, "a suit for malpractice" against its counsel. *E.g., Schwarz v. United States*, 384 F.2d 833, 835–36 (2d Cir. 1967).

In this case, there can be no dispute that Contraband's counsel (The Rapacke Law Group) has appeared on Contraband's behalf and has consistently acted with authority as Contraband's agents responsible for conducting this litigation. (*E.g.,* Facts, *supra*, at ¶¶ 1, 3-5, 7-9 & 11-14.) *See* LOCAL RULE 11.1(d)(1) ("The filing of any pleading shall, unless otherwise specified, constitute an appearance by the person who signs such pleading."); *E.g., Osborn*, 22 U.S. at 830-

31 (authority is presumed upon appearance). Indeed, where Contraband is a business entity, it cannot act otherwise. *E.g., Palazzo*, 764 F.2d 1382, 1385-86. To this end, Contraband is bound by the acts and representations of its freely selected agents—a truism unaltered by Contraband's newly-invented misgivings about its counsel. *E.g., Link*, 370 U.S. at 633-34. And such an outcome is particularly appropriate here, where Contraband admittedly met with its counsel on multiple occasions and explicitly authorized its counsel to accept the parties' Agreement on Contraband's behalf. (*E.g.,* Facts, *supra*, at ¶¶ 7, 9, 12-13 & 18-19.)[2] The Court should, accordingly, reject any argument that the parties' Agreement was merely accepted by Contraband's counsel as opposed to Contraband itself. Simply stated, the acts of Contraband's counsel—freely selected agents and officers of the Court responsible for conducting litigation on Contraband's behalf—*are* the acts of Contraband itself.

> B. Determination of Whether a Contract Exists is a Matter of Law Which Turns on Offer, Acceptance, Consideration, and Sufficient Specificity

Turning to the substance of the parties' Agreement, in order to "establish the existence of a contract," it must be shown "that the 'basic requirements of contract law' under Florida law were met, including 'offer, acceptance, consideration and sufficient specification of essential terms.'" *Mink v. Smith & Nephew, Inc.*, 860 F.3d 1319, 1332 (11th Cir. 2017) (quoting *St. Joe Corp. v. McIver*, 875 So.2d 375, 381 (Fla. 2004)); *see also Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009) ("To prove the existence of a contract, a [party] must plead: (1) offer; (2) acceptance; (3) consideration; and (4) sufficient specification of the essential terms.")

Importantly, settlement agreements, which "are highly favored and must be enforced wherever possible," are "governed by the law of contracts" in Florida. *Bonagura v. Home Depot*, 991 So.2d 902, 904 (Fla. Dist. Ct. App. 2008) (citing *Nichols v. Hartford Ins. Co.*, 834 So.2d

---

[2] To the extent Contraband now argues that its counsel either (a) misunderstood Contraband's wishes, (b) misled Contraband throughout the settlement negotiation process or (c) was not authorized to act on Contraband's behalf as a basis for avoiding the parties' binding settlement Agreement, Fit Four requests leave to depose Contraband's counsel concerning any such representations to the extent necessary to resolve the instant motion on a complete record.

217, 219 (Fla. Dist. Ct. App. 2002) (internal quotation marks omitted)); *see also Lazzaro v. Miller & Solomon Gen. Contrs., Inc.*, 48 S.3d 974, 975 (Fla. Dist. Ct. App. 2010 ("a stipulation properly entered into and relating to a matter upon which it is appropriate to stipulate is binding upon the parties and upon the Court. This is especially true of settlement agreements which are highly favored in the law. A settlement agreement is a contract. An unambiguous contract provision must be afforded its plain meaning." (internal quotation marks, citations and alteartions omitted)). Moreover, determining "whether an agreement constitutes a valid contract is a matter of law…." *Bonagura*, 991 So.2d at 904 (internal quotation marks and alterations omitted).

In addition, it has been widely recognized that "Florida courts have routinely permitted issues of enforceability of settlements to be resolved through motions filed in the pending litigation rather than requiring independent actions." *JILCO, Inc. v. MRG of S. Fla., Inc.*, 162 So.3d 108, 110 (Fla. Dist. Ct. App. 2014) (quoting *Stamato v. Stamato*, 818 So.2d 662, 664 (Fla. Dist. Ct. App. 2002) (internal quotation marks omitted)). Indeed, "[t]he proper course" under such circumstances "is for the court to resolve the dispute regarding the validity of the agreement…." *JILCO*, 162 So.3d at 110.

   C. <u>While Represented By Counsel, Contraband Accepted the Parties' Agreement, Which is Supported by Consideration and Adequate Specificity to be Enforced</u>

In this case, there can be no dispute that an offer was made and accepted. Specifically, following Contraband's initial offer, the parties engaged in settlement discussions for more than two months. (*See* Facts, *supra*, at ¶¶ 7-12.) Indeed, on May 23, 2018, Contraband made Fit Four an offer in summary or outline form. (*See id.* at ¶ 9.) Contraband's proposed deal points were unconditionally accepted only a few hours later. (*See id.* at ¶ 10.) The parties subsequently spent more than a month exchanging draft full-length agreements consistent with the already accepted primary deal points. (*See id.* at ¶¶ 11-15.) During that entire process, Contraband was represented by counsel and repeatedly met with its counsel to review and understand the terms of the parties' Agreement. (*See, e.g., id.* at ¶¶ 7 & 13-14.) That process culminated in a detailed,

full-length integrated Agreement, which Contraband unequivocally and unconditionally accepted on July 10, 2018. (*See id.* at ¶ 14.)

In addition to offer and acceptance, the parties' Agreement (attached as Ex. B) facially recites consideration, including, but not limited to, dismissal of the parties' respective claims in exchange for various specifically identified rights and obligations. (*See* Ex. B, *passim*.) Likewise, all of the essential terms are set forth in specific detail. (*See id.*)

These facts are undisputed – and even readily admitted by Contraband – and demonstrate the existence of a valid, binding and enforceable settlement Agreement among the parties, supported by a legally cognizable offer, acceptance, consideration, and sufficient detail as to the essential terms. (*See, e.g.,* Facts at ¶¶ 7-21; *see also* Exs. A-D, *passim*.) Contraband's buyer's remorse—triggered by securing additional litigation funding—does nothing to change the foregoing. (*See, e.g.,* Facts at ¶¶ 18-23.) Accordingly, this Court can and should enforce the parties' Agreement as a matter of law, including awarding Fit Four its attorneys' fees incurred in connection with the preparation of the instant motion necessitated by Contraband's refusal to comply with that Agreement. (*See* Facts at ¶¶ 20-22; Ex. B at § 8.12.)

## II. Enforcement of the Parties' Contract is Also Equitable and Appropriate Given Fit Four's Reliance on the Agreement and Contraband's Conduct

Importantly, Fit Four did not initiate the above-captioned action. (*See, e.g.,* Facts at ¶ 1.) Indeed, Contraband chose to initiate suit. (*See, e.g., id.*) Moreover, Contraband actively proposed and pursued settlement negotiations culminating in Contraband's preparation of the parties' final Agreement. (*See* id. at ¶¶ 7-15.) Nevertheless, based solely on the acquisition of additional litigation funding, Contraband now seeks to repudiate the parties' Agreement despite months of negotiations at great expense to Fit Four. In view of Contraband's conduct and Fit Four's reliance on Contraband's acceptance of the parties' months-long settlement negotiations culminating in the Agreement, it would be unfair and highly prejudicial to Fit Four not to enforce the Agreement on its terms. Indeed, so holding would reward Contraband for initiating litigation

and then conducting sham settlement negotiations as a ruse merely to allow Contraband to delay proceedings, acquire additional litigation funding and then renege on the parties' binding Agreement. Where settlement agreements "are highly favored and must be enforced wherever possible," the parties' Agreement should be enforced against Contraband in accordance with Contraband's knowing and willful acceptance thereof. *See Bonagura*, 991 So.2d at 904.

## CONCLUSION

For all of the foregoing reasons, the parties' Agreement should be enforced against Contraband. Fit Four should be awarded its attorneys' fees incurred in being forced to prepare and bring the instant motion and Contraband should be required to comply with the Agreement in its entirety, including voluntarily dismissing the above-captioned action with prejudice.

## CERTIFICATION OF CONFERRAL

Pursuant to Local Rule 7.1(a)(3), counsel for Fit Four certifies that its conferred with all parties or non-parties who may be affected by the relief sought herein in a good faith effort to resolve the issues raised in the motion but has been unable to do so. Specifically, in addition to email correspondence attached as Exhibits A, C and D, counsel for Fit Four spoke with Contraband by phone on August 1, 2018 in a good faith effort to resolve the issues presented in this motion. Nevertheless, the parties were unable to resolve their differences.

DATED August 14, 2018.

**HOLLAND & KNIGHT**

By: */s/ Brett Barfield*
　　Brett Barfield
　　Florida bar No. 192252
　　brett.barfield@hklaw.com
　　701 Brickell Ave,. Ste. 3300
　　Miami, FL 33131
　　305 374 8500

**KIRTON MCCONKIE**

　　James T. Burton*
　　jburton@kmclaw.com
　　Joshua S. Rupp*
　　jrupp@kmclaw.com
　　36 South State Street, Suite 1900
　　Salt Lake City, UT 84111
　　801-323-5989
　　* Admitted *pro hac vice*

*Attorneys for Fit Four, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of August, 2018, I caused the foregoing to be filed using the Court's electronic filing system which provides service to all counsel of record on the Service List below.

/s/ *Brett Barfield*

## SERVICE LIST

Andrew S. Rapacke
**The Rapacke Law Group, P.A.**
9330 NW 10th Court
Plantation, FL 33322
Tel.: (407) 801-9368
Fax: (407) 992-6101
Email: andy@arapackelaw.com

4848-5863-7679