IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Civil No. 1:17-cv-24615-SCOLA/TORRES

CONTRABAND SPORTS, LLC,

    Plaintiff and Counterclaim Defendant,

vs.

FIT FOUR, LLC,

    Defendant and Counterclaimant.

**DEFENDANT'S COMBINED MOTION (a) FOR A FINDING THAT THE ATTORNEY-CLIENT PRIVILEGE HAS BEEN WAIVED, (b) FOR LEAVE TO CONDUCT LIMITED DISCOVERY, AND (c) TO CONTINUE REPLY BRIEF DEADLINE, OR, IN THE ALTERNATIVE, (d) FOR AN EXTENSION OF TIME**

Pursuant to Federal Rule of Civil Procedure 7, Local Rule 7.1, and the Court's inherent authority, Defendant and Counterclaimant Fit Four, LLC ("Fit Four"), by and through undersigned counsel of record, hereby respectfully moves the Court (a) to find that Plaintiff and Counterclaim Defendant Contraband Sports, LLC ("Contraband") has waived the attorney-client privilege, (b) for leave to take limited preliminary discovery of Contraband and its counsel, and (c) to continue the deadline for Fit Four's reply in support of its Motion to Enforce Settlement Agreement and for Award of Attorneys' Fees (the "Motion to Enforce")[1] until fourteen (14) days after completion of the above-referenced limited preliminary discovery of Contraband and its counsel (collectively, the "Motion for Leave").[2]

---

[1] Docket no. 15 (incorporated herein by this reference).

[2] Given the positions Contraband has taken in opposition to the Motion to Enforce, the instant Motion for Leave is consistent with the relief requested at footnote 2 of the Motion to Enforce. Nevertheless, the instant Motion for Leave has been prepared to formally set forth a request for such relief and to substantively provide additional factual detail and legal support for the same.

Alternatively, in the event that the Motion for Leave is denied, Fit Four respectfully moves the Court for an extension of time to file its reply in support of the Motion to Enforce until seven (7) days after entry of the Court's order denying the Motion for Leave (the "Motion for Extension of Time"). In accordance with Local Rule 7.1(a)(1), Fit Four's combined Motions for Leave and alternative Motion for Extension of Time are supported by the memorandum of law set forth below.

## INTRODUCTION

Despite representing that its prior counsel had terminated representation, Contraband, via that same counsel, has now opposed Fit Four's Motion to Enforce. More importantly, Contraband's opposition is premised on the allegedly bad advice of Contraband's counsel of record and the alternate advice of Contraband's new but unidentified counsel (which counsel has yet to appear). Indeed, in opposing Fit Four's Motion to Enforce the parties' Settlement Agreement and Release (the "Settlement Agreement"), Contraband has voluntarily disclosed the advice of its several attorneys and Contraband's alleged understanding of the law and the terms of the parties' Settlement Agreement based on such advice. And putting the advice and communications of its counsel at issue, Contraband now seeks to rescind the parties' Settlement Agreement based on such advice.

Under these circumstances, fairness dictates that Fit Four be allowed to invade the attorney-client privilege in order to fully respond to arguments and allegations set forth in Contraband's opposition to the Motion to Enforce. To this end, Fit Four has prepared the instant Motion for Leave, seeking a finding that Contraband has waived the attorney-client privilege with respect to the Settlement Agreement and granting Fit Four leave to conduct limited discovery prior to filing a reply in support of the Motion to Enforce. The limited discovery is aimed at, *inter alia*, demonstrating that Contraband instructed its attorneys to accept the Settlement Agreement. Such a finding – that Contraband accepted the Settlement Agreement

2

and agreed to resolve this litigation – would be dispositive of the currently-pending Motion to Enforce in Fit Four's favor.

Alternatively, in the event that the Court denies such relief, Fit Four seeks a modest extension of time to file its reply in support of the Motion to Enforce allowing the instant Motion for Leave to be resolved during the interim.

## **STATEMENT OF RELEVANT FACTS**

1. The parties agreed, via counsel, to settle this matter on July 10, 2018. (*See* docket no. 15 (Motion to Enforce) at ¶¶ 1-15 & Exs. A (correspondence) & B (Settlement Agreement)).[3]

2. Nevertheless, since that time, Contraband has sought to rescind the parties' Settlement Agreement and refused to dismiss this action, thus necessitating Fit Four's pending Motion to Enforce. (*See* docket no. 15 (Motion to Enforce) at ¶¶ 16-23 and Exs. C-D (correspondence)).

3. Indeed, notwithstanding representations that Contraband's counsel of record (i.e., Andrew S. Rapacke and Benjamin Bedrava of The Rapacke Law Group) had terminated their representation of Contraband, on August 27, 2018, Mr. Rapacke filed a memorandum opposing Fit Four's Motion to Enforce on Contraband's behalf. (*See* docket no. 20 (Opp. to Motion to Enforce)).

4. Prior to the filing of Contraband's opposing memorandum, Contraband's principal, Christopher French, disclosed to Fit Four the following:

- The Rapacke Law Group had terminated their representation of Contraband both orally and in writing owing, at least in part, to Contraband's refusal and/or inability to pay its legal fees;

- Prior to Contraband's acceptance of the Settlement Agreement via counsel on July 10, 2018, Contraband had, in fact, met with its counsel multiple times to review the substance of the Settlement Agreement and expressly instructed its counsel to accept the Settlement Agreement on Contraband's behalf;

---

[3] Exhibits A-D to Fit Four's Motion to Enforce (incorporated herein by this reference) were filed under seal subject to Fit Four's contemporaneous motion for leave to file under seal in accordance with Local Rule 5.4 (docket no. 16).

- After accepting the Settlement Agreement (allegedly owing solely to an absence of litigation funding), Contraband was able to secure additional litigation funding;

- Supported by additional funding, Contraband sought additional legal advice concerning the Settlement Agreement and was informed by unidentified counsel that the Settlement Agreement was allegedly unfavorable;

- Based on the legal advice of Contraband's unidentified counsel, as well as Contraband's new financial ability to maintain litigation, Contraband no longer wishes to be bound by the parties' Settlement Agreement and had informed The Rapacke Law Group of the same; and

- The Rapacke Law Group had "misunderstood [Mr. French's] thoughts about the settlement" *circa* July 10, 2018, implying that disagreement over the alleged misunderstanding had also contributed to The Rapacke Law Group's termination of their representation of Contraband.

(*See* docket no. 15 at Ex. D at 1-2; *see also* Declaration of Joshua S. Rupp (the "Rupp Decl."), attached hereto as **Exhibit "1"**, at ¶¶ 4-6(a)-(f)).

5.   Contraband's opposition to the Motion to Enforce continues this voluntary disclosure of communications between Contraband and its counsel, including the following:

- "The parties agreed to settlement terms on or around July 10, 2018";

- "When Contraband owner Christopher French instructed his attorneys on July 10, 2018 to move forward with the [Settlement Agreement], he did not intend to provide a final acceptance of the [Settlement A]greement or its terms";

- "Additionally, [Mr. French] was under the impression that the [Settlement A]greement was not final and that there would still be an opportunity to continue to review and discuss the specific details and terms of the [Settlement A]greement";

- Allegedly owing to questions Mr. French had about the Settlement Agreement more than a week later, *i.e.*, on July 18, 2018, Mr. French "sought the opinion of outside counsel, who explained several terms within the [Settlement A]greement that Mr. French had previously misunderstood";

- Contraband's unidentified "outside counsel explained" the alleged meaning, or legal interpretation, of the Settlement Agreement to Mr. French and corrected "Mr. French's mistaken belief[s]";

- Based on the advice of Contraband's unidentified "outside counsel[,] … Mr. French could no longer agree to the terms of the [S]ettlement [A]greement…"

4

4831-5045-1057

> which the parties had negotiated over the course of some nine (9) weeks because it was allegedly "not originally contemplated during [Contraband's] negotiations with Fit Four."

(*See* docket no. 20 (Opp. to Motion to Enforce) at ¶¶ 2-7.)

6. Contraband's opposition to the Motion to Enforce is supported by the Declaration of Mr. French, wherein Mr. French references "several weeks of discussing details of a settlement" with Contraband's counsel, "instruct[ing Contraband's counsel] to move forward with the draft of the Settlement Agreement," Mr. French's alleged misunderstanding of the term "Territory" within the Settlement Agreement, Mr. French's meeting with "outside counsel who explained several terms within the [Settlement A]greement" and disclosing, in part, the substance of that explanation. (*See* docket no. 20-1 (Decl. of Christopher French (the "French Decl.")) at ¶¶ 5-12.)

7. Notwithstanding Contraband's reference to "several" misunderstood terms in the Settlement Agreement (*see* docket no. 20 (Opp. to Motion to Enforce) at ¶ 6; docket no. 20-1 (French Decl.) at ¶ 10), Contraband's opposition to the Motion to Enforce only explicitly identifies one allegedly misunderstood term—the definition of "Territory." (*See* docket no. 20 (Opp. to Motion to Enforce) at ¶¶ 4-6; docket no. 20-1 (French Decl.) at ¶¶ 7-12.)

8. Importantly, the definition of the term "Territory" set forth in the Settlement Agreement was originally drafted *by Contraband's counsel* and was never changed or altered by Fit Four at any time. (*Compare, e.g.,* Contraband's Jun. 18, 2018 draft proposal (correspondence attaching Word and PDF copies of the draft proposal attached as **Exhibit "2"**) at ¶ 1, *with* Fit Four's Jun. 22, 2018 redline changes (correspondence attaching a Word copy of Fit Four's redline changes attached as **Exhibit "3"**) at ¶ 1; *see also* Contraband's Jul. 12, 2018 "final Settlement Agreement" (correspondence attaching Word and PDF copies of the final Settlement Agreement as **Exhibit "4"**) at ¶ 1.[4]

---

[4] In order to protect substantive confidential settlement communications and terms between the parties, Exhibits 2-4 appended hereto are the subject of a concurrently-filed motion for leave to file under seal. If the motion for leave to file under seal is granted, Fit Four will files Exhibits 2-4

9. In view of the foregoing, Fit Four has prepared and filed the instant Motion for Leave or, in the alternative, Motion for Extension of Time.

## ARGUMENT

I. **THIS COURT HAS THE INHERENT AUTHORITY TO GRANT THE MOTION FOR LEAVE; THE MOTION FOR LEAVE SHOULD BE GRANTED IN THE INTEREST OF JUDICIAL ECONOMY**

As a threshold matter, there can be no dispute that this Court "has the inherent authority to control its docket and ensure the prompt resolution of lawsuits…." *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018) (quoting *Weiland v. Palm Beach City Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015) (internal quotation marks omitted)). Indeed, the Court's inherent "powers are governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as achieve the orderly and expeditious disposition of cases." *Lee v. Am. Eagle Airlines, Inc.*, 93 F. Supp. 2d 1322, 1330 (S.D. Fla. 2000) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (internal quotation marks omitted)). And this power extends to stays, continuances and the like, which "power … is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants" according to the circumstances of each case. *See Landis v. N. American Co.*, 299 U.S. 248, 254 (1936). Likewise, the Court has inherent authority over all issues concerning the "enforce[ment of] settlement agreements entered into by parties litigant in a pending case." *See Cia Anon Venezolana De Navegacioun v. Harris*, 374 F.2d 33, 36 (5th Cir. 1967);[5] *Crusan v. Carnival Corp.*, No. 13-cv-20592, 2015 WL 12001261, at

---

under seal. During the interim, Exhibits 2-4 have been provided to and served on Contraband along with a complete copy of this combined motion. If the motion for leave to file under seal is denied, Fit Four will promptly provide the Court with complete copies of Exhibits 2-4.

[5] *E.g., Garcia-Celestino v. Ruiz Harvesting, Inc.*, 898 F.3d 1110, 1127 n.13 (11th Cir. 2018) ("In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), we adopted as precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.")

*1 (S.D. Fla. June 22, 2015, *report and recommendations adopted*, No. 13-cv-20592, 2015 WL 12001284 (S.D. Fla. June 24, 2015) (same).

Under the circumstances at bar, and for the reasons discussed more fully below, the Court not only has the inherent authority to grant Fit Four's Motion for Leave but should do so in the interest of judicial economy. Specifically, in order to ensure that Fit Four's Motion to Enforce is timely considered on a complete record, the Court should find that Contraband has waived the relevant attorney-client privilege and allow Fit Four to take limited preliminary discovery of Contraband and its counsel prior to filing its reply in support of the Motion to Enforce.

### A. Contraband Has Waived the Attorney-Client Privilege With Respect to Settlement Negotiations, Contraband's Initial Acceptance of the Settlement Agreement and Contraband's Efforts to Rescind the Settlement Agreement

While the attorney-client privilege is to be "jealously guarded,"[6] "the privilege is not a favored evidentiary concept in the law since it serves to obscure the truth…." *United States v. Suarez*, 820 F.2d 1158, 1160 (11th Cir. 1987) (collecting cases). To this end, the attorney-client privilege "should be construed as narrowly as is consistent with its purpose." *Id.* For example, "at the point where attorney-client communications are no longer confidential, i.e., where there has been a disclosure of a privileged communication, there is no justification for retaining the privilege." *Id.* Likewise, "it has long been held that once waived, the attorney-client privilege cannot be reasserted." *Id.* Simply stated, "[i]n determining whether a waiver has occurred, the Court applies the well-settled principle that *any* disclosure inconsistent with maintaining the confidential nature of the attorney-client privilege, including voluntary disclosure of privileged information, waives the privilege." *In re Fontainebleau Las Vegas Contract Litig.*, No. 09-02106-MD, 2011 WL 65760, at *10 (S.D. Fla. Jan. 7, 2011) (citing *Suarez*, 820 F.2d at 1160) (emphasis in original). Indeed, "intent to waive the privilege is not necessary for waiver[;]" rather, any "voluntary disclosure, regardless of knowledge of the existence of the privilege, deprives a subsequent claim of privilege based on confidentiality of any significance." *E.g.*

---

[6] *Progressive Exp. Ins. Co. v. Scoma*, 975 So.2d 461, 469 (Fla. Dist. Ct. App. 2007).

*Champion Int'l Corp. v. Int'l Paper Co.*, 486 S. Supp. 1328, 1332 (N.D. Ga. 1982) (citing, *inter alia*, *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)).

Beyond voluntary disclosures, asserting either a claim or an argument "that will necessarily require proof by way of a privileged communication" functionally operates as a waiver. *See Lender Processing Servs., Inc. v. Arch Ins. Co.*, 183 So. 3d 1052, 1060 (Fla. Dist. Ct. App. 2015) (emphasis in original omitted; internal quotation marks omitted); *Lee v. Progressive Express Ins. Co.*, 909 So. 2d 475, 477 (Fla. Dist. Ct. App. 2005) ("if proof of the claim would require evidence of the privileged matter, the privileged matter is discoverable"). Put otherwise, "if a party has injected into the litigation issues going to the very heart of the litigation, such party cannot avoid discovery into such issues by invoking the attorney-client privilege." *Arch Ins. Co.*, 183 So. 3d at 1062 (emphasis in original omitted; internal quotation marks omitted)); *see also Baratta v. Homeland Housewares, LLC*, 242 F.R.D. 641, 643 (S.D. Fla. 2007) (a party waives the attorney-client privilege if the party "injects the very issue which requires testimony from his attorney."). And such a waiver extends to all otherwise privileged "communications on that same matter." *See Arch Ins. Co.*, 183 So. 3d at 1060; *see also id.* at 1064 ("[A] party may not use the attorney-client privilege to prejudice his opponent's case or to disclose some selected communications for self-serving purposes. The privilege may be implicitly waived when defendant asserts a claim that in fairness requires examination of protected communications." (alterations in original omitted; internal quotation marks and citations omitted)).[7]

Regardless, the burden of establishing the existence and maintenance of the privilege is on the part asserting the privilege. *E.g., In re Fontainebleau Las Vegas Contract Litig.*, 2011 WL 65760, at *9.

---

[7] *See also Cox v. Adm'r United States Steel & Carnegie*, 17 F.3d 1386 (11th Cir. 1994) ("Where a party asserts that be believed his actions to be lawful, he waives the attorney-client privilege as to what his attorney told him about the legality of his actions." (internal quotation marks omitted)).

8

In this case, Contraband has (a) voluntarily disclosed otherwise privileged communications <u>and</u> (b) put the otherwise privileged advice of Contraband's counsel squarely at issue with respect to at least the following:

- The parties' May 2, 2018 – July 10, 2018 settlement negotiations;

- Contraband's initial acceptance of the parties Settlement Agreement on July 10, 2018; and

- Contraband's subsequent efforts to rescind the Settlement Agreement occurring between at least July 10, 2018 and the present as well as the alleged bases for rescission.

For example, Contraband has both voluntarily disclosed and put at issue the substance of Contraband's "instruct[ion]" to its counsel "to move forward with the draft of the Settlement Agreement," now suggesting that Contraband's counsel misunderstood that instruction. (*E.g.*, docket no. 20 (Opp. to Motion to Enforce) at ¶¶ 2-3; docket no. 20-1 (French Decl.) at ¶¶ 5-6.) Likewise, Contraband has both voluntarily disclosed and put at issue its understanding, based on detailed discussions with counsel occurring both before and after July 10, 2018, as to the meaning and preparation of the parties' Settlement Agreement. (*E.g.*, docket no. 20 (Opp. to Motion to Enforce) at ¶¶ 2-7; docket no. 20-1 (French Decl.) at ¶¶ 5-13.) Similarly, Contraband has both voluntarily disclosed and put at issue the legal advice of Contraband's un-named "outside counsel," which allegedly induced Contraband to renege on the Settlement Agreement.[8] (*E.g.*, docket no. 20 (Opp. to Motion to Enforce) at ¶¶ 6-7; docket no. 20-1 (French Decl.) at ¶¶ 10-13.) Indeed, Contraband has even voluntarily disclosed and put at issue The Rapacke Law Group's reasons for allegedly terminating their representation of Contraband in connection with

---

[8] Based on the information currently available, this assertion appears to be a pretext for attempting to rescind the parties' Settlement Agreement where Mr. French previously blamed his dissatisfaction with the Settlement Agreement on Contraband's inability to finance litigation juxtaposed with Contraband's acquisition of additional litigation funding. *See* docket no. 15 at Ex. D at 1-2; Rupp Decl. at ¶¶ 4-6(a)-(f)). Such pretext is also evidence where Contraband's counsel drafted the allegedly offending provision of the Settlement Agreement, which provision was never changed by Fit Four. (*See* Exs. 2-4.)

Contraband's decision to first accept the Settlement Agreement followed by attempts to rescind the Settlement Agreement as well as the advice of Contraband's subsequent but un-named counsel. (*E.g.,* docket no. 15 at Ex. D at 1-2; Rupp Decl. at ¶¶ 4-6(a)-(f); docket no. 20-1 (French Decl.) at ¶¶ 10-13.)[9]

In short, far from jealously guarding confidential attorney-client privileged communications, Contraband has voluntarily disclosed the sum and substance of numerous otherwise privileged communications with its counsel concerning the parties' settlement negotiations, Contraband's acceptance of the Settlement Agreement and Contraband's bases for seeking rescission of the Settlement Agreement. Likewise, Contraband has put the advice of its counsel concerning settlement negotiations, a legal interpretation of the Settlement Agreement, and the prudence of the Settlement Agreement directly at issue. This constitutes a waiver of the privilege as to the underlying subject matter. Under such circumstances, the Court should find that Contraband has waived the attorney-client privilege as to communications and advice related in any way to the parties' Settlement Agreement, including communications and advice from Contraband's counsel of record (The Rapacke Law Group) as well as Contraband's un-named "outside counsel" throughout the settlement negotiation process and continuing to the present.

      **B.**    **Fit Four Should be Granted Leave to Take Limited Discovery of Contraband and its Counsel Prior to and for the Purpose of Preparing Contraband's Reply in Support of the Motion to Enforce**

Consistent with the Court's "inherent authority to control its docket and ensure the prompt resolution of lawsuits…"[10] discussed *supra*, this Court's authority to authorize limited preliminary discovery is beyond cavil. *See Procaps S.A. v. Patheon Inc.*, No. 12-24356-CIV, 2015 WL 2090401, at *4 (S.D. Fla. May 5, 2015) ("the Court attempts to interpret the[ Federal Rules of Civil Procedure] in light of reason and practical experience and … will enforce the rules strictly when necessary and relax them when required." (internal quotation marks and citation

---

[9] *See also* Statement of Relevant Facts (the "Facts"), *supra*, at ¶¶ 1-9.
[10] *See e.g., Vibe Micro*, 878 F.3d at 1295; *Weiland*, 792 F.3d at 1320.

4831-5045-1057

omitted)); *see also, e.g., id.* at \*12-13 ("The Court has discretion to permit or deny the requested depositions."); FED. RS. CIV. P. 26(b)(2)(A) & 30(a)(2).

In this case, while Fit Four can certainly propound written discovery on and take the depositions of Contraband and its principal, Mr. French, without first obtaining leave, Fit Four seeks leave of Court to (a) issue preliminary written discovery on and (b) take preliminary depositions of Contraband and Mr. French limited to the issue of the parties' settlement negotiations, Contraband's acceptance of the Settlement Agreement, and Contraband's subsequent attempts to rescind the Settlement Agreement. The purpose of seeking leave is twofold: first, Fit Four seeks leave to take such preliminary discovery solely for purposes of preparing Fit Four's reply in support of the Motion to Enforce without limiting Fit Four's subsequent ability to take additional and comprehensive discovery (including a second deposition of both Contraband and Mr. French) concerning the merits of the parties' claims and defenses should the Settlement Agreement not be enforced. And second, Fit Four seeks leave of Court in order to proactively address Contraband's waiver of the attorney-client privilege, discussed *supra*.

In addition, beyond Contraband and Mr. French, Fit Four seeks leave to (a) issue preliminary written discovery on and (b) take the depositions of Andrew S. Rapacke, Benjamin Bedrava, and the one or more un-named attorneys Contraband has identified only as "outside counsel." As above, where conducting discovery on opposing counsel is both atypical and ordinarily precluded by the attorney-client privilege, Fit Four seeks leave of Court to take such discovery to proactively address Contraband's waiver of the attorney-client privilege as well as the scope of that wavier. Such relief is particularly appropriate where, as set forth in the Motion to Enforce, Contraband is bound by the conduct of Contraband's freely-selected attorney-agents. *E.g., Link v. Wabash Railroad Co.*, 370 U.S. 626, 633-34 (1962).[11] Where Contraband is now

---

[11] *See also* docket no. 15 (Motion to Enforce) at §§ I(A) & I(C) (incorporated herein by this reference) (discussing and providing authority supporting the legal principle that litigants are bound by the actions and inactions of their counsel).

attempting to rescind affirmative acceptance of the Settlement Agreement on the basis that the Settlement Agreement was accepted by counsel, Fit Four is entitled to conduct discovery of Contraband and its counsel concerning the actions of Contraband's attorneys which are now alleged to have been taken without authority and/or in error, including, most importantly, acceptance of the Settlement Agreement and the basis for Contraband's attempts to now rescind.

In this case, there is good cause to grant Fit Four leave to take limited preliminary discovery of Contraband and its counsel (by both written discovery and depositions) solely for the purpose of preparing Contraband's reply in support of the Motion to Enforce. Specifically, where Contraband has voluntarily disclosed its otherwise privileged communications with counsel concerning the parties' Settlement Agreement and related communications, there is no justification for retaining the privilege. *See, e.g. Suarez*, 820 F.2d at 1160. More importantly, where Contraband has put the advice and communications of its counsel squarely at issue with respect to the parties' settlement negotiations, Contraband's acceptance of the Settlement Agreement (through its agent-attorneys), and Contraband's attempt to rescind the Settlement Agreement, fairness dictates that Fit Four be allowed to examine the protected communications for purposes of supporting the Motion to Enforce. *See, e.g., Arch Ins. Co.*, 183 So. 3d at 1064. Put otherwise, if this limited discovery demonstrates that Contraband did, in fact, tell its attorneys to accept the Settlement Agreement, this case should be concluded and the motion to enforce should be granted.  Accordingly, leave to conduct the discovery outlined herein (without counting such discovery against the limits of the Federal Rules of Civil Procedure) should be granted.

    **C.**    **Pending Conclusion of the Above-Referenced Discovery, Fit Four's Deadline to File a Reply in Support to the Motion to Enforce Should be Continued**

Again, this Court has significant discretion to control its docket so as to maximize economy of time and effort for itself, for counsel, and for litigants and to ensure the prompt resolution of cases. *E.g., Landis*, 299 U.S. at 254. This holds with respect to extending time

under Federal Rule of Civil Procedure 6(b) (*e.g., Hetzel v. Bethlehem Steel Corp.*, 50 F.3d 360, 367 (5th Cir. 1995)), particularly where "a request is made … before the original time or its extension expires…." FED. R. CIV. P. 6(b)(1)(A); *see also Pineda v. American Plastics Techs., Inc.*, No. 12-21145-CIV, 2014 WL 1946686, at *9 (S.D. Fla. May 15, 2014) (citing *Hetzel*, 50 F.3d at 367)).

      Here, Fit Four's deadline to file a reply in support of the Motion to Enforce, as extended, is Tuesday, September 11, 2018. (Docket no. 22.) As such, the instant Motion for Leave has been filed before the relevant deadline has expired. FED. R. CIV. P. 6(b)(1)(A). More importantly, the instant motion is supported by good cause inasmuch as the finding of a privilege waiver and leave to take the preliminary and limited discovery herein bears directly on the merits of the pending Motion to Enforce. Simply stated, the testimony of Contraband and its counsel concerning the parties' settlement negotiations, Contraband's acceptance of the Settlement Agreement, and Contraband's subsequent efforts to rescind the Settlement Agreement are directly germane to the merits of the Motion to Enforce. In order to ensure that the Motion to Enforce is efficiently decided on a complete record, a brief continuance of Fit Four's deadline to file a reply in support of the Motion to Enforce pending the completion of discovery requested herein is warranted. The Court should, therefore, continued Fit Four's deadline to file its reply until fourteen (14) days after the above-referenced limited preliminary discovery has been concluded.

    **II.   IN THE EVENT THAT THE MOTION FOR LEAVE IS DENIED, FIT FOUR SHOULD BE GRANTED A ONE-WEEK EXTENSION OF TIME FOLLOWING DENIAL TO FILE ITS REPLY IN SUPPORT OF THE MOTION TO ENFORCE**

      Alternatively, in the event that the above-presented Motion for Leave is denied, Fit Four respectfully moves the Court for an extension of time to file its reply in support of the Motion to Enforce until seven (7) days after entry of the Court's order denying the Motion for Leave. Under the circumstances, such relief is appropriate pursuant to the Court's inherent authority as well as Federal Rule of Civil Procedure 6(b)(1)(A). Specifically, while Fit Four contends that

discovery of Contraband and its counsel is relevant to resolution of the Motion to Enforce and should be permitted in advance of the filing of Fit Four's reply, a denial of such relief should not bar Fit Four from filing any reply, even if limited solely to information presently available. Moreover, the preparation of any such reply prior to the Court's resolution of the Motion for Leave may result in a waste of time and resources for the Court as well as the parties if the briefing must be supplemented in the future. To this end, if the Court denies Fit Four's Motion for Leave, Fit Four requests that the Court extend Fit Four's deadline to file a reply in support of the Motion to Enforce until seven (7) days after entry of the Court's order.

## CONCLUSION

For all of the foregoing reasons, the Court should find that Contraband has waived the attorney-client privilege with respect to the parties' Settlement Agreement and thus grant Fit Four leave to conduct limited preliminary discovery on Contraband and its counsel concerning the same. Moreover, Fit Four's deadline to file a reply in support of the pending Motion to Enforce should be continued until fourteen (14) days after the discovery has been completed.

Alternatively, in the event that the Court denies leave to conduct discovery in advance, Fit Four should be granted a brief extension of its deadline to file a reply in support of the Motion to Enforce until seven (7) days after entry of the Court's Order denying the Motion for Leave.

## CERTIFICATION OF CONFERRAL

Pursuant to Local Rule 7.1(a)(3), counsel for Fit Four certifies that it conferred with all parties or known non-parties who may be affected by the relief sought herein in a good faith effort to resolve the issues raised in this combined motion but has been unable to do so. Specifically, on September 10-11, 2018, the parties conferred in writing in an effort to resolve the issues set forth within this combined motion. Nevertheless, the parties were unable to resolve their differences.

DATED September 11, 2018.

**HOLLAND & KNIGHT**

By: */s/Brett Barfield*

Brett Barfield
Florida bar No. 192252
brett.barfield@hklaw.com
701 Brickell Ave,. Ste. 3300
Miami, FL 33131
305 374 8500

**KIRTON MCCONKIE**

James T. Burton*
jburton@kmclaw.com
Joshua S. Rupp*
jrupp@kmclaw.com
36 South State Street, Suite 1900
Salt Lake City, UT 84111
801-323-5989
* Admitted *pro hac vice*

*Attorneys for Fit Four, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of September, 2018, I caused the foregoing to be filed using the Court's electronic filing system which provides service to all counsel of record on the Service List below.

/s/ *Brett Barfield*

## SERVICE LIST

Andrew S. Rapacke
**The Rapacke Law Group, P.A.**
9330 NW 10th Court
Plantation, FL 33322
Tel.: (407) 801-9368
Fax: (407) 992-6101
Email: andy@arapackelaw.com

4831-5045-1057